UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AMY M. MATTHEWS, )<br>)<br>   *Plaintiff,* )<br>)<br> v.     )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>   *Defendant* ) | Cause No. 2:21-CV-193 RLM-JPK |

ORDER AND OPINION

Amy M. Matthews seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court heard argument on July 25, 2022, and now REVERSES and REMANDS the Commissioner's decision, and DENIES Ms. Matthews's motion to supplement [Doc. No. 27] as unnecessary.

I. BACKGROUND

Amy Matthews filed a Title II application for Disability Insurance Benefits and a protective application for Title XVI Supplemental Security Income on July 27, 2018, for a period of disability beginning May 25, 2018. Ms. Matthews's applications were denied initially and upon reconsideration. Ms. Matthews requested a hearing, which was held by video on March 10, 2020, in Valparaiso,

and received a supplemental telephonic hearing on June 30, 2020. Julie Bose, a vocational expert, testified at the first hearing. Ms. Matthews, Dr. James Todd (a medical expert), and Donna Toogood (a vocational expert) all testified at the supplemental hearing. Counsel represented Ms. Matthews at the supplemental hearing. Ms. Matthews submitted additional records after the hearing and the ALJ admitted them into the record. The ALJ issued an unfavorable decision to Ms. Matthews on September 14, 2020. The ALJ concluded that:

> 1. Ms. Matthews met the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. Ms. Matthews hadn't engaged in substantial gainful activity since May 25, 2018, the alleged onset date. 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*
>
> 3. Ms. Matthews had the following severe impairments: recurrent arrhythmias, fibromyalgia, post-traumatic stress disorder, bereavement disorder, and anxiety disorder. 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 4. Ms. Matthews didn't have impairments that were severe enough, either singularly or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered recurrent arrhythmias (Listing 4.05), inflammatory arrhythmias (Listing 14.09), and all mental impairments (section 12.00 of Appendix 1). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.
>
> 5. Ms. Matthews has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, stand, and walk for 6 hours each in an 8-hour workday, and to push and pull as much as she can lift and carry, with the following additional limitations. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can never work at unprotected heights or around moving mechanical parts. She can never operate a motor vehicle. She can have no concentrated exposure to dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, vibration, or loud noise environments without the use of hearing protection. She can perform simple, routine tasks. She can

2

occasionally interact with supervisors, co-workers, and the public, and such contact must be brief and superficial (defined as no lower than an 8 in terms of the 5th digit of the DOT Code).

6. Ms. Matthews is unable to perform any past relevant work. 20 C.F.R. §§ 404.1565, 416.965.

7. Ms. Matthews was born on May 16, 1976, and was 42 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. 20 C.F.R. §§ 404.1563, 416.963.

8. Ms. Matthews has at least a high-school education. 20 C.F.R. §§ 404.1564, 416.964.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Matthews is "not disabled," whether or not she has transferable job skills. S.S.R. 82-41; 20 C.F.R. § 404, Subpt. P, App. 2.

10. Considering Ms. Matthews's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Matthews can perform. Considering the vocational expert's testimony that Ms. Matthews would be able to perform light occupations with an SVP of two, she could perform jobs such as cleaner (about 220,000 positions in the national economy), mail clerk (about 13,000 jobs in the national economy), and marker (about 125,000 jobs in the national economy).

11. Ms. Matthews wasn't under a disability as defined by the Social Security Act from May 25, 2018, through the date of the decision.

The ALJ concluded that Ms. Matthews wasn't entitled to disability benefits because she wasn't disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied her request for review. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

II.    STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). A reviewing court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court conducts "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted). While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

III.    DISCUSSION

Ms. Matthews argues the ALJ's decision was unsupported based on: (1) the ALJ's assessment and consideration of mental limitations; (2) the ALJ's assessment of Ms. Matthews's subjective symptoms; (3) substantial evidence the

4

ALJ should've addressed but didn't; (4) the ALJ's assessment of Ms. Matthews's fibromyalgia; and (5) issues with the vocational expert's testimony at Step 5.

Ms. Matthews first argues that the decision is unsupported because the ALJ didn't properly account for mental limitations related to pace in the residual functional capacity and hypothetical questions posed to the vocational expert. She says the ALJ should have imposed limitations that specifically addressed pace because the ALJ found moderate limitations in concentration, persistence, and pace at Step 3. She further contends that she should have had a pace limitation based on evidence of her anxiety, dizziness, poor sleep, fatigue, pain, and headaches, which would make it difficult to stay on task and maintain pace. She cites a state agency opinion that she had moderate limitations in pace and points out that any error would be prejudicial because the vocational expert testified that attendance problems more than twice a month would preclude work.

The Commissioner responds that none of the evidence Ms. Matthews cites shows that greater limitations are needed or that limitations specifically connected to pace are required. So according to the Commissioner, Ms. Matthews didn't meet her burden of presenting evidence of a pace-related limitation. *See* Punzio v. Astrue, 630 F.3d 704, 712 (7th Cir. 2011) ("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity.") (citing 20 C.F.R. §§ 404.1512(a), (c), (b), 404.1545(a)(3)). The Commissioner addresses the state agency consultant's opinion by arguing that the ALJ properly paid greater attention to the narrative

5

portion of the opinion. The narrative portion incorporated the checkbox limitation about pace and focused more on the complexity of tasks, saying that Ms. Matthews could attend to tasks long enough to complete them. The Commissioner adds that any medically documented limitations were accounted for with the limitations the ALJ did impose—simple routine tasks, and limitations on interactions with others.

    The Commissioner is right that the ALJ properly considered mental limitations. The evidence Ms. Matthews cites doesn't connect clearly or directly to pace. The conditions described, like anxiety, poor sleep, and dizziness, might lead to pace problems, but they don't guarantee issues with pace, so the ALJ didn't need to make that inference. Nor was it error to find moderate limitations at Step 3 but not include a specific pace limitation in the residual functional capacity. The residual functional capacity is a separate and more specific determination than Step 3. Mapes v. Berryhill, No. 1:16-cv-03329, 2017 U.S. Dist. LEXIS 111166, at *14 (S.D. Ind. July 18, 2017) (citing S.S.R. 96-8p). The ALJ crafted a more specific residual functional capacity, limiting Ms. Matthews to "simple, routine tasks," and "occasional[] interact[ions] with supervisors, co-workers, and the public." [R. 33]. The ALJ must address all mental limitations but needn't use specific terminology. O'Connor-Spinner v. Astrue, 627 F.3d 614, 619 (7th Cir. 2010). Ms. Matthews hasn't pointed to evidence that would require a pace-specific limitation that the ALJ ignored or otherwise shown that the ALJ erred in considering her mental limitations.

Ms. Matthews next argues the ALJ improperly considered her subjective symptoms in several ways.

Ms. Matthews first argues the ALJ used improper "boilerplate language" indicating the ALJ used the wrong standards to assess her subjective symptoms. Ms. Matthews concedes that boilerplate language alone isn't reason to reverse an ALJ's denial of benefits. The specific language from the ALJ's decision was that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." [R. 33].

Ms. Matthews is correct that the language the ALJ used is disfavored, *e.g.*, Lafayette v. Berryhill, 743 F. App'x 697, 699 (7th Cir. 2018), but the language doesn't amount to error in this case because it is just the start of the ALJ's more thorough analysis of Ms. Matthews's subjective symptoms. So, even if the language suggests the ALJ assessed her subjective symptoms with the wrong standard, Ms. Matthews doesn't explain how the ALJ's specific analysis of the evidence proves the wrong standard.

Ms. Matthews also argues the ALJ erred by ignoring the effects of her medications. Ms. Matthews testified that she takes four prescriptions that cause sleep problems at night and drowsiness during the day, and cited evidence from medical providers who had to tinker with various medications, like one prescribed for insomnia.

While an ALJ might do best by addressing every medication and medication side effect, Cosby v. Berryhill, No. 16 C 11504, 2017 WL 4237048,

7

at *4 (N.D. Ill. Sept. 25, 2017), an ALJ needn't discuss each piece of evidence. Sims v. Barnhart, 309 F.3d 424, 429 (7th Cir. 2002). The ALJ didn't specifically discuss Ms. Matthews's medications, but discussed fatigue, drowsiness, and other related symptoms while evaluating Ms. Matthews's subjective symptoms. The ALJ's decision not to specifically identify Ms. Matthews's medications as a cause of some of the symptoms the ALJ addressed doesn't amount to error.

Ms. Matthews makes another argument about the sporadic and episodic nature of her symptoms and her daily activities. These arguments are difficult to assess as Ms. Matthews's briefing seems to have been copied almost entirely from another judicial opinion. See Anthony S. v. Saul, No. 18 CV 50220, 2020 WL 30601, at *2–5 (N.D. Ill. Jan. 2, 2020). A parenthetical record citation purports that Ms. Matthews said, "Some days I am ok and some days I am not ok," but that phrase doesn't come from any citation to Ms. Matthews's record—it seems to have been in the record in Anthony S. v. Saul. Id. at *4.[1] This suggests to the court that this argument isn't developed as fully as it could be for Ms. Matthews's circumstances.[2] To the extent Ms. Matthews makes an argument

---

[1] Ms. Matthews's brief eventually cites Anthony S. v. Saul, but without clearly attributing any rule or argument to Anthony S. v. Saul. [Doc. No. 20 at 7–9]. By not using quotation marks for text copied verbatim and by placing short citations after several sentences that come from Anthony S. v. Saul, Ms. Matthews's brief doesn't properly explain how it used Anthony S v. Saul in presenting an argument to the court.

[2] Aside from potentially undermining Ms. Matthews's position, presenting another's analysis as one's own raises other questions about plagiarism and professional ethics. See Consol. Paving, Inc. v. Cnty. of Peoria, Ill., No. 10-CV-1045, 2013 WL 916212, at *5–6 (C.D. Ill. Mar. 8, 2013) ("Case law is meant to support an attorney's arguments, but borrowed analysis, and especially quoted material, must be cited."); A.L. v. Chi. Pub. Sch. Dist. No. 299, No. 10 C 494, 2012 WL 3028337, at *6 (N.D. Ill. July 24, 2012) ("Not only does Plaintiff's counsel lift the legal standards set forth in those decisions, but

8

about her own circumstances, she doesn't cite evidence establishing that the episodic or sporadic nature of her symptoms or evidence about her daily activities were an elephant in the room that the ALJ needed to address.

Next, Ms. Matthews argues the ALJ's subjective symptom analysis relied on outdated evidence. The ALJ found Dr. Todd persuasive. Dr. Todd relied at least in part on the state agency consultants' opinions. The state agency consultants didn't have access to a trove of new records, though, so Ms. Matthews argues Dr. Todd's opinion was outdated, leaving the subjective symptom analysis unsupported. *See* Lambert v. Berryhill, 896 F.3d 768, 776 (7th Cir. 2018).

The ALJ didn't only consider Dr. Todd's testimony but considered the later-introduced evidence and explained its consistency with the state agency opinions. So even if Dr. Todd's testimony could've been more up to date, the ALJ didn't rely on Dr. Todd's testimony without knowing of the new evidence or without being able to consider how new evidence might compare to Dr. Todd's testimony. In any event, the symptoms Ms. Matthews described in the new evidence are many of the same conditions described in earlier opinions, so she hasn't shown how they're "new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion." Id.

Ms. Matthews takes issue with Dr. Todd's testimony for another reason—she argues Dr. Todd testified that if he considered Ms. Matthews's subjective

---

counsel additionally presents unaltered case specific analysis from those cases without attribution, including application of law to fact and distinguishing of authority.").

symptoms, he'd have to opine she was disabled, and also that Dr. Todd's opinion couldn't be relied on since he didn't adequately consider her subjective symptoms. Her first argument doesn't show error because it misapprehends the record: Dr. Todd didn't testify that any consideration of Ms. Matthews's subjective symptoms would lead to an opinion that she was disabled—he opined that if her subjective symptoms were the *only* thing he considered, despite their having little to no grounding in objective evidence, that he'd have to opine that she was disabled. [R. 114]. The second argument appears to copy verbatim from another court opinion³ and takes issues with specific statements by Dr. Todd but doesn't explain how that would make the ALJ's decision unsupported. Reversal is not warranted based on Dr. Todd's testimony.

Ms. Matthews's next major argument is that the ALJ ignored substantial evidence. She seems to argue that the ALJ imposed light work restrictions on her by ignoring the real definition of light work and how light work might conflict with Ms. Matthews's standing limitations. According to Ms. Matthews, the ALJ said there was "no reason why the act of standing and walking alone, without having to lift, carry, push, or pull, would be expected of light work." [Doc. No. 20 at 12]. Ms. Matthews contends, "The ALJ makes no effort to explain how this would be possible for someone limited to two hours of standing." Id.

---

³ Ms. Matthews's brief appears to copy from Korzeniewski v. Colvin, No. 12 C 6895, 2014 WL 1457854, at *8 (N.D. Ill. Apr. 14, 2014), without proper attribution, as evidenced by a close parenthesis that's misplaced in her brief but properly placed in Korzieniewski v. Colvin.

This argument is premised on an abbreviated version of what the ALJ said. The ALJ's decision said:

> The undersigned finds these evidentiary considerations, which fairly characterize the records a whole and as discussed in more detail above, to be consistent with Dr. Todd's proposed limitation to light work, and therefore only partly consistent with the consultants' proposed exertional limitations. (In short, the undersigned sees no reason why the act of standing and walking alone, without having to lift, carry, push, or pull <u>more than would be expected of light work</u>, would be expected to exceed her strength, exhaust her, etc., in light of these evidentiary considerations.)

[R. 35] (emphasis added).

When the ALJ's statement is read fully and in context, it's clear the ALJ wasn't proposing that light work never involves lifting or carrying weight. Ms. Matthews's argument is premised on a statement the ALJ didn't make, so the court finds no error.

Ms. Matthews's second argument about whether the ALJ ignored substantial evidence focuses on how the ALJ applied the regulatory factors to various medical providers' opinions. *See* 20 C.F.R. § 404.1520c(c). Ms. Matthews's argument contests how the ALJ considered those factors but doesn't identify errors that the court could correct without reweighing the evidence.[4] A reviewing court doesn't reweigh evidence, so the ALJ's consideration of medical providers' opinions isn't reason to remand.

---

[4] Ms. Matthews's rule statement appears to be copied with some modifications from Lisa E. v. Comm'r of Soc. Sec., 20-CV-0037MWP, 2021 WL 4472469, at *3–4 (W.D.N.Y. Sept. 30, 2021).

11

Ms. Matthews's next major argument is that the ALJ didn't properly consider her allegations of fibromyalgia and the alleged severity of her fibromyalgia symptoms. (Part of this argument comes with her subjective symptom argument, but the court addresses all fibromyalgia arguments together). She argues the ALJ improperly discounted alleged symptoms even though fibromyalgia isn't measured by objective evidence. *See* Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). She later argues the ALJ improperly ignored agency standards for assessing fibromyalgia. *See* S.S.R. 12-2p.

Ms. Matthews argues that the ALJ wrongly discounted her alleged fibromyalgia symptoms because objective evidence didn't support her allegations. Ms. Matthews cites the ALJ's discussion in which he reported Ms. Matthews's tenderness in all 18 tender points, diffuse full-body pain, and intermittent fatigue, normal strength, sensation, reflexes, joints, and gait, and noted that Ms. Matthews didn't report malaise, weight loss, or fevers. [R. 34]. Ms. Matthews contends it was improper to consider objective evidence to discount her fibromyalgia's severity, but she isn't any more specific than referring to "objective evidence." [Doc. No. 20 at 7]. The Commissioner responds that even if the ALJ considered objective evidence, his decision didn't rely on those findings as he discussed all sorts of fibromyalgia symptoms.

ALJs must tread carefully when considering objective evidence and fibromyalgia. *See* Vanprooyen v. Berrihill, 864 F.3d 567, 572 (7th Cir. 2017). Ms. Matthews's argument refers to "objective evidence," without identifying which

12

evidence is particularly troublesome, though.[5] The court can't tell which of the ALJ's considerations are contested, so the court finds no error.

Neither do Ms. Matthews's arguments about the proper standards for evaluating fibromyalgia show that the ALJ's decision is unsupported. Ms. Matthews relies on S.S.R. 12-2p, which guides ALJs assessing fibromyalgia. Ms. Matthews argues the ALJ didn't properly apply the S.S.R. 12-2p's standards, so the court should remand with instructions to properly apply agency standards.

The portions of the agency policy Ms. Matthews cites focus on the things an ALJ should consider when considering whether fibromyalgia is a medically determinable impairment at Step 3. The ALJ concluded that fibromyalgia was a medically determinable impairment at Step 3, and Ms. Matthews arguments past Step 3 seem to repeat her earlier unspecific complaints. The rest of Ms. Matthews's fibromyalgia arguments either present discrepancies between briefing and the record,[6] or otherwise seem to be repeating what other courts have said.[7] None show reversible error.

---

[5] Ms. Matthews's argument about the subjective symptoms of fibromyalgia appear to be copied from Paula K. v. Saul, No. 1:20cv318, 2021 WL 2802575, at *9 (N.D. Ind. July 6, 2021). [Doc. No. 20 at 7]. This section of Ms. Matthews's brief makes minimal changes to account for Ms. Matthews's record, inhibiting the court's ability to assess her argument.

[6] For example, Ms. Matthews says, "Moreover, no medical expert found that Claimant's cranial nerves had any relation to fibromyalgia." [Doc. No. 20 at 17]. Although the record is vast and there might be references to Ms. Matthews' cranial nerves, this is the only reference the court found to cranial nerves in any of the briefing. The likeliest explanation is that this was a leftover citation from Molly K. v. Saul, No. 18 C 3415, 2019 WL 3857885, at *8 (N.D. Ill. Aug. 16, 2019), which appears to have been copied in large part to form Ms. Matthews's arguments about fibromyalgia.

[7] Most of the fibromyalgia section, both rule statements and analysis/argumentation, seems to have been the product of Molly K. v. Saul as well as Lisa E. v. Comm'r of Soc.

Ms. Matthews's final set of arguments concerns Step 5 and the vocational expert's testimony. The ALJ has a limited burden at Step 5 of showing that sufficient jobs exist in the national economy for the claimant. 20 C.F.R. §§ 404.1512(b)(3), 404.1560(c)(2). Ms. Matthews argues there are conflicts in the vocational expert's testimony and no evidence about the methodology the vocational expert used to estimate job numbers, so the decision is unsupported.

Ms. Matthews first argues there are conflicts between her residual functional capacity and two of the three jobs the vocational expert said were available—mail clerk and cleaner. As the Commissioner points out, even if this is true, the vocational expert testified that a third job (marker) would be available. Any conflict in the testimony about mail clerk and cleaner positions would be harmless, so remand isn't warranted on that basis. Shinseki v. Sanders, 556 U.S. 396, 409–410 (2009).

Ms. Matthews next argues that the ALJ didn't do enough to ensure that the vocational expert's testimony was reliable. At Step 5, "substantial evidence

---

Sec., 20-CV-0037MWP, 2021 WL 4472469, at *6 (W.D.N.Y. Sept. 30, 2021), and Paula K. v. Saul, No. 1:20cv318, 2021 WL 2802575, at *5–6, 8–9 (N.D. Ind. July 6, 2021).

The court cautions Ms. Matthews's counsel against copying argument without proper attribution for reasons other courts have thoroughly addressed. See United States v. Lavanture, 74 F. App'x 221, 223 n.2 (3d Cir. 2003) ("[B]y simply reprinting the Sixth Circuit's work out of its original context, certain statements in [Defendant's] brief are inaccurate."); Ayala v. Lockheed Martin Corp., 67 V.I. 290, 310–315 (Super. Ct. 2017) ("In this instance, however, what is more troubling, beyond simply copying and pasting someone else's research, is that counsel also copied and pasted someone else's reasoning. . . . [I]f counsel did reach the same conclusion as [a judge] . . . then counsel should have conveyed that sentiment in his own words."); Venesevich v. Leonard, No. 1:07-CV-2118, 2008 WL 5340162, at *2 n.2 (M.D. Pa. Dec. 19, 2008).

14

requires the ALJ to ensure that the vocational expert's estimate is the product of a reliable methodology." Ruenger v. Kijakazi, 23 F.4th 760, 763 (7th Cir. 2022) (citing Brace v. Saul, 970 F.3d 818, 821–822 (7th Cir. 2020)). After opining that a person with Ms. Matthews's residual functional capacity could perform the jobs of cleaner, mail clerk, and marker, the vocational expert testified that her testimony was consistent with the Dictionary of Occupational Titles. [R. 133]. According to Ms. Matthews, this isn't substantial evidence because the Dictionary of Occupational Titles only lists job titles and requirements but gives no job numbers. Ruenger v. Kijakazi, 23 F.4th at 762. So, the vocational expert hasn't provided a single source for her estimates of the *number* of jobs available— she's only provided a source of the job requirements.

According to the Commissioner, the ALJ was entitled to rely on the testimony despite the vocational expert not explaining any source for job numbers because Ms. Matthews didn't object at the administrative hearing but could have. *See* Liskowitz v. Astrue, 559 F.3d 736, 744 (7th Cir. 2009). The Commissioner contends that the ALJ only needs to elicit further explanation from a vocational expert once the claimant challenges the vocational expert's methodology. *See* Ruenger v. Kijakazi, 23 F.4th at 763 ("And when, as here, the claimant challenges the job-number estimate, the ALJ must compel the vocational expert to offer a 'reasoned and principled explanation' of the methodology she used to produce the estimate.") (internal citation omitted).

Although Ms. Matthews's proceedings would have been more efficient had she or her counsel objected at the hearing, she didn't need to object at the

15

hearing to preserve any error and the ALJ's burden at Step 5 required a bit more probing about the vocational expert's methodology. The Commissioner interprets Ruenger v. Kijakazi as only requiring the ALJ to probe if the claimant objects, but that interpretation doesn't take into account all of what the Ruenger court said. The court explained that even before the claimant objects, substantial evidence requires assurances that the vocational expert has used a reliable methodology, which means it's based on well-accepted sources and includes a cogent and thorough explanation of the methodology. Ruenger v. Kijakazi, 23 F.4th at 763. The court suggested that if the claimant objects, then the ALJ should probe more, "compel[ling] the vocational expert to offer a 'reasoned and principled explanation' of the methodology she used to produce the estimate." Id. (citing Chavez v. Berryhill, 895 F.3d 962, 970 (7th Cir. 2018)). The Ruenger court went on to explain that it couldn't "review her methodology, let alone confirm that it was reliable," since the vocational expert didn't explain how she compiled job numbers. Id.

Greater examination of Liskowitz v. Astrue, 559 F.3d 736 (7th Cir 2009) leads to the same conclusion. In Liskowitz v. Astrue, the court explained that the vocational expert could've offered a more detailed explanation of her methodology had the claimant objected at the hearing. Id. at 744. But unlike the vocational expert's testimony in Ms. Matthews's case, any objection came after the vocational expert had provided sources: "In additional to testifying that her sources were widely recognized as acceptable, the VE actually identified her sources. Two of these sources were published by the United States Department

16

of Labor and the Wisconsin Department of Workplace Development." Id. at 743–744. So even if Ruenger v. Kijakazi leaves an ALJ some leeway when a claimant doesn't object to a vocational expert's testimony, Liskowitz v. Astrue still requires that the ALJ ensure the methodology for estimating job numbers is reliable. Ms. Matthews's record has a source for job titles and requirements, but no evidence of a methodology to estimate job numbers, so the ALJ didn't meet the Step 5 burden.

Ms. Matthews adds that the vocational expert likely used the equal distribution method, which is generally disfavored, so the decision is unsupported. *See* Chavez v. Berryhill, 895 F.3d 962, 969 (7th Cir. 2018). The Commissioner seems to concede that there's no record evidence of where the vocational expert got job number estimates, as the Commissioner agrees that the Dictionary of Occupational Titles doesn't include information about the number of jobs available. Because there's no evidence of the methodology used to estimate job numbers, the court can't tell whether the vocational expert used the equal distribution method and if so, whether that prejudiced Ms. Matthews.

When the ALJ's decision is unsupported at Step 5, the proper remedy is a new Step 5 hearing where the vocational expert "may be able to expand on her testimony of make some other showing that significant jobs exist for [the claimant]," and where Ms. Matthews "will have the opportunity to challenge such a showing." Ruenger v. Kijakazi, 23 F.4th at 764. Having found error only at Step 5, the court reverses and remands for the limited purpose of a new Step 5 hearing.

## IV. CONCLUSION

Based on the foregoing analysis, the court concludes that the ALJ's decision wasn't supported by substantial evidence at Step 5 and REVERSES the decision of the Commissioner and REMANDS for proceedings consistent with this opinion. The court DENIES Ms. Matthews's motion to supplement [Doc. No. 27] as unnecessary.

SO ORDERED.

ENTERED: <u>August 1, 2022</u>

<u>  /s/ Robert L. Miller, Jr.       </u>
Judge, United States District Court